BRAY, P. J.
 

 Plaintiff appeals from a judgment in favor of defendants denying damages for an alleged breach of contract.
 

 Questions Presented
 

 1. Does the fact that Palma Ceia was an unlicensed contractor compel judgment in plaintiff’s favor?
 

 2. Does the evidence support the court’s findings (a) that defendants did not breach the contract, (b) that plaintiff did?
 

 3. Were the findings unsupported, contradictory, and did they fail to cover the issues ?
 

 Record
 

 The controversy arises out of a contract entered into August 21, 1954, between plaintiff as subcontractor and defendant Palma Ceia as general contractor for the construction in the city of Hayward of a sanitary pumping station, a sanitary sewer main line (referred to as
 
 force
 
 main) and a gravity sewer line (referred to as
 
 gravity line).
 
 The work was to be performed in a subdivision being developed by defendants Branden and Branden Construction, Inc. These two were joined as defendants on the theory that they were principals and agents of Palma Ceia in the said contract. The complaint contained three counts, (1) for breach of contract, (2) for foreclosure of mechanic’s lien, and (3) for fraud. Defendants answered and cross-complained (later
 
 *367
 
 an amendment was allowed to include a counterclaim). To conform to proof plaintiff was permitted to file an amended complaint setting up a fourth count, alleging that the contract was illegal because defendants were not licensed contractors. Plaintiff’s motion for nonsuit on the cross-complaint was denied. Defendants’ motion for nonsuit was granted as to the mechanic’s lien count but denied as to the other three counts.
 
 *
 
 Judgment was entered on all counts in favor of defendants and in favor of plaintiff on defendants’ cross-complaint and counterclaim. Defendants do not appeal.
 

 1. Effect of Lack of License.
 

 Admittedly Palma Ceia did not have a contractor’s license. Plaintiff did. Such license was required. (Bus. & Prof. Code, §§ 7028, 7031, 7056 and 7057.) Plaintiff contends that the lack of license made the contract void, and that as plaintiff had such license and did not discover until during the trial that defendant Palma Ceia did not, plaintiff was not in
 
 pari delicto
 
 and is entitled to recover on a
 
 quantum meruit
 
 and that defendant Palma Ceia may not assert any defense based on the contract. The court found that Palma Ceia did not have a contractor’s license but that “The failure to have a license in no way prevents said defendant, or any of them, from asserting and proving their answer and defense.” The court correctly expressed the law in California in this statement. It is well settled that the failure to obtain a required contractor’s license will bar the contractor from recovering for his work in an action brought by him, but will not bar him from offsetting as a defense sums which would otherwise be due him under the illegal contract. “It is to be noted that the statute merely prohibits a contractor from maintaining or bringing an action upon a contract which he has entered into pertaining to the contracting business. It does not prohibit him when sued from setting up as a defense any sums which may be equitably due him from the plaintiff upon such illegal contract. Such a contract is not
 
 malum in se
 
 but merely
 
 malum prohibitum.” (Marshall
 
 v.
 
 Von Zumwalt
 
 (1953), 120 Cal.App.2d 807 [262 P.2d 363].) The contractor’s license statute cannot be used as a shield to avoid a just obligation.
 
 (Norwood
 
 v.
 
 Judd
 
 (1949), 93 Cal.App.2d 276 [209 P.2d 24].) The courts will not
 
 *368
 
 impose penalties on a contractor for noncompliance with the licensing requirements other than that provided by the statute.
 

 2. Sufficiency of the Evidence.
 

 This is a typical conflict of evidenec case in which the trial court resolved the conflict in favor of the defendants. Plaintiff in its exceedingly lengthy briefs comments on the credibility of witnesses and details evidence which possibly could have supported a judgment in its favor. The rule is so well settled that this court is bound by the findings of the trial court on conflicts where there is substantial evidence to support those findings, that it does not require the citation of authorities. In considering plaintiff’s contentions concerning the findings we will refer principally to the evidenee which supports them.
 

 (a)
 
 Defendants Did Not Breach the Contract.
 

 The contract made time of the essence and provided that progress payments were to be made “progressively on the 8th day of each month for all work completed during the preceding month ending on the 30th or 31st day thereof,” less 10 per cent retention. The sums retained were to be paid 35 days after completion of all work, provided that said work was accepted by the city of Hayward. The contract provided that plaintiff was to be paid for all of the work specified in the contract, “the following lump sums set forth opposite the following respective items:
 

 “Schedule A—Pump Station...........$41,010.00
 

 “Schedule B—Force sanitary sewer main line .............. 24,810.00
 

 “Schedule C—Gravity sewer line....... 26,309.00
 

 Total......$92,129.00.”
 

 September 14, 1954, during the progress of the work, plaintiff was given a change order affecting the force line. This work amounted to $10,050. Progress payments were made for the work completed during September and October.
 

 Plaintiff notified defendants on November 24 that it claimed to have completed all work under the contract and requested completion payment and that notice of completion be filed. The contract does not provide for a completion payment, but only for the progress payments and the 10 per cent retention, which is not payable until 35 days after completion.
 
 *369
 
 Thereafter and on December 2 plaintiff submitted a bill requesting payment of $18,183, which was the balance of the contract price and the price of the work under the change orders then unpaid. The parties concede that under the terms of the contract the price of the change orders work would be added to the contract price and considered in figuring the progress payments. It is plaintiff’s contention that on December 8 he was entitled to a progress payment of 90 per cent of this $18,183 and that the failure to pay it constituted a breach by Palma Ceia of the contract. The court found that on December 8 there was nothing due from defendants to plaintiff. Certainly plaintiff was not entitled to the amount requested at that time as even under plaintiff’s contention that the contract was completed on November 24, the 35 days after completion had not yet run. Had plaintiff then requested a progress payment, and had it been refused, defendants, except for the matters hereafter discussed, might be considered to have breached the agreement for not paying the progress payment. But plaintiff was not asking for that; it was asking for the entire balance, a sum to which it was not entitled.
 

 As a result of plaintiff’s notice of November 24 claiming it had completed the work, Branden asked the city to accept the work which acceptance, as will hereafter appear, was required. The city conducted a “light and ball” test specified in the contract and found six large breaks in the gravity line and that considerable water had infiltrated. The city then issued an order to stop work on the line. A meeting was held at the office of the city engineer on December 2 at which the parties and the city engineer and inspector were present, and the parties were informed that the city refused to accept the line because of the condition of the line. Plaintiff was informed that because of the failure of the city to accept the line, defendants would not make the payment demanded by plaintiff. The city required that the line be repaired. Plaintiff agreed to do so. There is a conflict in the evidence as to whether plaintiff was to do this at his own expense or as an extra at Palma Ceia’s expense, or whether the expense was to be shared by the parties. In January a test made by the Sealite people, who were to apply their process to the line, disclosed a much larger number of breaks in the line and that it was from one-half to one-third full of water.
 
 *370
 
 After repairing only part of the breaks during the middle of January, plaintiff on January 20 again billed defendants for the total amount unpaid under the contract, plus extra work. No money being forthcoming, plaintiff on January 26 stopped working and refused to continue with the job, contending that Palma Ceia had breached the contract by failing to pay the amounts demanded by plaintiff. Branden, Palma Ceia’s president, testified that at the meeting of December 2 he told plaintiff that Palma Ceia would not pay the money demanded until the line was repaired so that it could be used. He figured that because of its condition the whole line might have to be dug up. The trial court found in effect that because of the defective work Palma Ceia was justified in not paying plaintiff any more money, not even the 90 per cent progress payment which would otherwise have been due December 8. Had Palma Ceia made such payment, there would have been retained by it only $10,217.90 on the contract price, which was not enough to ensure of the repairing of the line as demanded by the city. As said in
 
 Golden Gate Lbr. Co.
 
 v. Sahrbacher, 105 Cal. 114,116 [38 P. 635], “Upon an examination of the evidence we conclude that the contractor failed to comply with the terms of his contract in substantial particulars, and, having committed breaches of the contract, ’ ’ he was not entitled to payment.
 

 Plaintiff contends that the portions of the work to be done under the contract were severable and that in any event he was entitled to payment for the pumping plant and force main which were completed properly, plus the extras thereon. However, it is clear from the terms of the entire contract and the circumstances as shown by the evidence that the work was not severable and constituted an entire contract, and a failure to construct any portion of the work in a satisfactory manner was a sufficient breach to justify refusal of payment. It is clear, too, that it was. absolutely necessary that there be completion and acceptance by the city of Hayward of the entire project before it was of any practical benefit to Palma Ceia, a fact well understood by the parties. The evidence shows, too, that plaintiff intentionally departed from the specifications and that the defects in the line were so substantial as to defeat the entire purpose of the contract which was to complete a sewer system which would deliver sewage from the tract to the city’s system.
 

 
 *371
 
 (b)
 
 Plaintiff Breached the Contract.
 

 The court found that plaintiff had breached its contract by failing to perform it to the satisfaction and approval of the city engineer and according to the specifications of ordinance 506-NS, and allowed as an offset to the amounts claimed by plaintiff, the damages suffered by Palma Ceia from that breach. Primarily, this question depends upon the correctness of the court’s determination that the contract required such approval and that said specifications applied.
 

 The contract provided “that the plans and specifications for said gravity line are those as contained under ordinance #506 NS of the City of Hayward and as specified and detailed in connection with Tract 1424, Palma Ceia Village ...” (the tract where the work was to be performed). There were no plans in the ordinance, but plaintiff was furnished some 11 pages of specifications from the ordinance. One of those provisions was “Trenches shall be excavated vertically . . .” Another was that the trenches must be shored and braced. Branden, Palma Ceia’s president, testified that during the contract negotiations he specifically informed plaintiff that vertical trenching was required and that plaintiff should not bid if it intended to open-cut the excavation. Plaintiff produced open-cut “V” type trenches, and neither shored nor braced them. The city of Hayward issued a stop order requiring plaintiff to cease work until it conformed to the specifications in the ordinance. At a meeting of the parties and representatives of the city of Hayward a variation was agreed upon but plaintiff thereafter refused to construct according to the agreed plan. Plaintiff failed to backfill, to lay the type of base for pipes, to use jetting procedures and to pour pipe joints, as required by the ordinance specifications. Nor did it maintain on the job a competent foreman or superintendent at all times, as required by the contract. As a result of these failures, the evidence showed that the pipe was out of line and grade and there was excessive infiltration into the pipeline. At the before mentioned meeting of the parties with the city officials, the plaintiff agreed to repair the breaks and the infiltration which the city had discovered. Plaintiff then employed Sealite Company to apply their process to the line to reduce the infiltration. Plaintiff agreed with Sealite that plaintiff would repair the large bréales and Sealite agreed to then follow with the application of their
 
 *372
 
 solution. After repairing a few breaks plaintiff abandoned the work and the Sealite Company also quit. Palma Ceia was required to engage another contractor to complete the project.
 

 The evidence supports the court’s finding that plaintiff’s work was defective, and that plaintiff was not justified in abandoning the work. The contract provided: ‘ ‘ Sub-contractor agrees that defective materials or faulty work shall be replaced by and at the expense of sub-contractor for the period of one (1) year after completion.” Plaintiff insists that the contract did not require approval by the city authorities nor except in a minor way were the specifications of ordinance 506-NS a part of the contract. The court found to the contrary. Paragraph First of the contract provided: “Sub-contractor agrees to furnish all labor, materials, supplies and equipment necessary to perform in a workmanlike manner all that certain work more particularly set forth in those certain plans and specifications of the City of Hayward, which plans are entitled ‘Valle Vista Pumping Station, [’] ... containing 7 sheets . . . and which specifications are entitled ‘ Specifications For The Construction of the Valle Vista Pumping Station . . . ’ containing general provisions, scope of work and specifications, and all of which work, labor and materials shall be furnished and performed subject to the acceptance and approval of the City Engineer of the City of Hayward.” Paragraph Ninth provided: “It is expressly understood that there is a gravity sewer line to be installed under this agreement and that the aforesaid plans and specifications do not contain any reference to said gravity sewer line . . . and that the plans and specifications for said gravity line are those as contained under ordinance #506 NS of the City of Hayward and as specified and detailed in connection with Tract 1424, Palma Ceia Village . . . Sub-contractor does hereby acknowledge that he has acquainted himself with the details and specifications for said gravity sewer line as specified and required in connection with Tract 1424 ...” The specifications referred to in paragraph Ninth state that the contractor shall supply all materials required for the construction of the force main. “All materials shall comply with Section 5 of Ordinance 506 NS.” “Trenching shall be done in accordance” with said ordinance. “General requirements: All materials shall conform to applicable requirements of Section Five of Ordinance 506 NS and to the Standard specifications except as otherwise provided ...” Plaintiff contends that
 
 *373
 
 these references are specific references for specified purposes only and do not constitute a general reference or incorporation of the complete ordinance. The ordinance does not contain plans and specifications detailed in connection with Tract 1424. The ordinance is entitled “City of Hayward . . . Standard Specifications for Residential Development.” For construction of the gravity line plaintiff was furnished a set of plans (there being none in the ordinance) and the specifications contained in pages 33 to 44 of the ordinance. Plaintiff’s main objection to the application of the ordinance is the requirement that the work must be done to the approval of the city engineer and accepted by the city. Plaintiff’s work was not so done or accepted. On the contrary, it was rejected.
 

 As the contract is ambiguous the background of the contract is applicable in determining the effect of the references in the contract to the ordinance and to the approval of the city engineer. In conjunction with the development of Palma Ceia Village, and particularly Tract 1424, it was necessary that a sewage system connecting with the Hayward city sewage system be constructed outside the physical limits of the tract. Sewage from the tract must necessarily pass through the gravity line, the force main and the pumping plant. Therefore no single unit was of value without the others. When completed the pump house and force main would be incorporated into a Sewer Benefit District. Ordinance 506-NS was enacted to ensure proper and acceptable construction of all such sewage systems in tract developments within the city. The ordinance contained a standard set of specifications for all such work. Plaintiff had previously constructed projects in the area and was familiar with the requirements of the ordinance. Each project required the approval of the city engineer as to its plans. The evidence shows that prior to entering into the contract plaintiff understood that the work necessarily must be approved by the city engineer and accepted by the city. The requirement that a formal resolution of the city council was necessary for the acceptance of the work was discussed during the negotiations of the parties. While the reference in paragraph First to the effect that “all . . . work, labor "and materials shall be furnished and performed subject to the acceptance and approval of the City Engineer” is in the paragraph referring only to the pumping station and in paragraph Ninth the reference to the plans
 
 *374
 
 and specifications in ordinance 506-NS deals with the gravity line alone, all of the work provided in the contract, pumping station, force main and gravity line, was to be done in accordance with any applicable provision of the ordinance. Moreover, in the pages of the ordinance which plaintiff received as specifications appear requirements that all materials required for the force main comply with the ordinance, trenching to be done according to it, and then “General requirements”—all materials shall conform to its applicable requirements.
 

 Moreover, the conduct of the parties shows that they interpreted the contract as requiring that the work be done to the approval of the city engineer and be accepted by the city. The main trouble was the work on the gravity line. The city claimed the line was out of grade and alignment and issued a stop order on the work. A meeting of the parties was called with city representatives. At the meeting the city determined the method of proceeding. Plaintiff agreed to it and also to the order of the city that henceforth the work was to be done under the direction of the city inspector and the city engineer. Plaintiff contends that it did so under compulsion and not as a recognition of the requirements of the contract. The court could have so found. However, there was contrary evidence and the court resolved that evidence against plaintiff.
 

 There can be no question but that the gravity line was out of grade and out of line and that the line leaked and water infiltrated. There was evidence that plaintiff used improper trenching procedures and did not brace and shore in accordance with the ordinance, that it did not properly backfill, install a sufficient base or foundation for the pipeline, jet properly, or pour pipe joints properly.
 

 Plaintiff’s main contentions concerning the above are (1) that it did all work properly, as it was not required to do all the work in accordance with the ordinance (this we have heretofore answered); (2) that the plans and specifications for the project were unsuited for it, inadequate and defective. The court found to the contrary. There is ample evidence to support the finding. Again, here there was a conflict in the testimony given by the experts. It is significant that the work done by the contractor who undertook to repair and finish plaintiff’s work was done under the same plans and specifications and was satisfactory to and accepted by the city, as well as other sewer work done elsewhere in Hayward under the same plans and specifications.
 

 
 *375
 
 Plaintiff makes much of the fact that there was a close relationship between Palma Ceia, three other corporations, Branden Construction, Inc., Palm View and Brunswick, and Branden, claiming that all four corporations were
 
 alter egos
 
 of Branden and also that Branden and the other corporations were either principals or agents of Palma Ceia. In view of the court’s finding that plaintiff was not entitled to recover any moneys from any defendant, this question is of no importance. Nor is the fact that Palma Ceia’s contract with the city of Hayward only dealt with the force main and pumping station, and the city’s contract as to the gravity sewer line was with Palm View and Brunswick, and that there was no privity as to the gravity line construction between Palma Ceia, the city of Hayward and Palm View Homes and Brunswick Homes. Plaintiff contracted with Palma Ceia to construct the project, and Palma Ceia agreed to pay for the construction. What Palma Ceia’s relationship to the others was is of no concern to plaintiff. Plaintiff tries to make it such by claiming that because of lack of privity with the city, plaintiff was not required to do the work on the gravity line to the city’s approval. However, as we have pointed out, plaintiff agreed with Palma Ceia that the work must be done to the city’s approval.
 

 Plaintiff contends that the order given by the city to both plaintiff and Palma Ceia that thereafter the work on the gravity line be done “under the direction” of the city inspector and the city engineer relieved plaintiff of any responsibility for the character of the work. Actually these officials did not “direct” the work; they merely supervised it. Moreover, article H, page 10 of ordinance 506-NS provided that the inspector was not authorized to revoke, alter or waive any requirements of the specifications and “any advice which the inspector may give the contractor shall in nowise be construed as binding to the Engineer in any way, or releasing the contractor from fulfilling all of the terms of the contract.”
 

 3. Findings.
 

 Plaintiff contends that the findings are not supported, are contradictory, and do not cover all of the fact issues in the ease. We deem it unnecessary to discuss the findings in detail. A study of them and the record shows that there was substantial evidence to support the findings made, and that when read together there is no contradiction in them.
 
 *376
 
 Too, all issues necessary to support the judgment were found upon.
 

 The judgment is affirmed.
 

 Tobriner, J., and Duniway, J., concurred.
 

 A petition for a rehearing was denied April 26, 1960, and appellant’s petition for a hearing by the Supreme Court was denied May 25, 1960. Dooling, J. pro tem.,
 
 *
 
 participated therein in place of Spence, J.
 

 *
 

 Although plaintiff appealed from the entire judgment, it does not question the propriety of the court’s ruling on the mechanic’s lien count.
 

 *
 

 Assigned by Chairman of Judicial Council.