Martin J. DIBLIK, Appellant,

v.

Scott C. MARCY, Appellee.

No. S–11557.

Supreme Court of Alaska.

Aug. 31, 2007.

Danny W. Burton, Wasilla, for Appellant.

Kenneth D. Albertsen, Palmer, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Martin Diblik sued Scott Marcy after Marcy sold him a house with a defective underground septic tank. Before closing, Marcy signed a statutory disclosure statement in which he stated that, "to the best of [his] knowledge," there were no defects in the septic system. Marcy also signed an "addendum" in which he incorrectly answered "none" when he was asked to "list all repairs done in the last two years." Following a bench trial, the superior court entered judgment for Marcy. Diblik argues that the court erred, because Marcy is liable for his misstatements and for violating AS 34.70.040(a) by failing to supplement his residential real property disclosure statement after the tank's floats and pump were repaired. We conclude that the trial court did not clearly err in finding that the "no defects" disclosure statement assertion was not a negligent misrepresentation and that the "no repairs" addendum misstatement was both innocent and immaterial. And given these findings, Marcy had no duty to amend the disclosure statement and consequently did not violate AS 34.70.040(a). We therefore affirm.

## II. FACTS AND PROCEEDINGS

Scott Marcy bought a new house in 1999. Unbeknownst to him, it was connected to a used underground septic tank. During the first year he owned the house, a minor problem with the tank's wiring required workers to untangle "some jumbled wires." In November 2000 Marcy had workers replace a broken outflow pipe on the tank. A worker who performed this repair later testified that as of November 2000 when the workers "dug it up and fixed [the pipe]," there were no holes in the septic tank.

Marcy listed the house for sale and then entered into a purchase agreement with Martin Diblik in April 2001. On April 5 Marcy filled out and gave Diblik a residential real property disclosure statement in which he stated that "to the best of [his] knowledge," there were no defects or malfunctions in the

septic tank. At the same time, Marcy also gave Diblik an "addendum" to his disclosure statement, answering "none" when the addendum asked him to "list all repairs done in the last two years." The purchase agreement stated that the buyer relied on the information contained in the disclosure statement.

On April 26 an inspector hired by Diblik inspected the house and noted no problems with the septic system. On April 27 an engineer hired by Marcy's real estate agent began a series of inspections of the septic system to see if it was functioning adequately. The engineer concluded that the system was functioning adequately, but noticed that the septic system pump seemed to be cycling continuously; he reported this problem to the real estate agent. Around the end of April and the beginning of May, the floats that controlled the septic pump were replaced and a short time later the septic pump itself was replaced. The worker who replaced the floats and pump testified at trial but was not asked about the condition of the tank itself. He did explain that when he removed the top of the tank: "[Y]ou couldn't see the floats, nothing. Everything was just under water."

After the pump was replaced, the engineer tested the system "to make sure that the pump was cycling properly." The engineer concluded that the system was operating normally and that the new pump was not cycling continuously, as the old pump had before it was replaced. Marcy's real estate agent provided Diblik with copies of the engineer's reports that explained that the septic pump had been replaced. The real estate agent also provided Diblik with the telephone number of the company that replaced the pump and invited Diblik to call the company if he wanted more information about the repairs

to the septic system. Diblik testified that "some time in mid-May" he went to the house and discussed the septic problem with the engineer hired by Marcy's realtor, but Diblik testified that he never inspected the septic system personally, and that he did not arrange to have his own inspection done after the pump was replaced.

The sale closed on May 31 and Diblik moved in on June 9. The same day he moved in, Diblik noticed that the pump was cycling constantly. Workers then discovered that the tank was rusted through with holes, one the size of a golf ball. Ground water was seeping into the tank and causing the pump to activate.

Diblik sued Marcy, claiming that Marcy had violated the residential real property disclosure statement statute [1] and made "material misrepresentations in contract and tort."

Superior Court Judge Eric B. Smith held a two-day bench trial and heard testimony from Diblik, Marcy, and five other witnesses. Following trial, the superior court ruled that Marcy was not liable to Diblik for the cost of replacing the tank.

Diblik appeals.

## III. DISCUSSION

### A. Standard of Review

 If there is no genuine dispute of material fact, the existence and scope of a legal duty are questions of law.[2] Whether a misstatement was negligently made is a question of fact.[3] Whether a misrepresentation is material is a mixed question of law and fact.[4] We review questions of law de novo.[5] We review findings of fact for clear error.[6] A fact finding is not clearly erroneous unless the reviewing court has a definite and firm conviction that a mistake has been

1. *See* AS 34.70.090 (addressing effect of disclosure statement for real property sales).

2. *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell,* 956 P.2d 1199, 1204 (Alaska 1998).

3. *Beaux v. Jacob,* 30 P.3d 90, 101 (Alaska 2001) ("Whether particular conduct is negligent is a question of fact."). *Cf. Edgington v. Fitzmaurice,* (1885) 29 Ch. Div. 459, 483 (U.K.) ("[T]he state of a man's mind is as much a fact as the state of his digestion.").

4. *Cousineau v. Walker,* 613 P.2d 608, 613 (Alaska 1980).

5. *Forshee v. Forshee,* 145 P.3d 492, 497 (Alaska 2006).

6. *Keturi v. Keturi,* 84 P.3d 408, 412 (Alaska 2004).

made.[7] We do not weigh the evidence anew on appeal, but only determine whether the trial court's findings are supported by the record.[8]

### B. The Disclosure Statement

On April 5, 2001, before the septic tank's floats and pumps were replaced, Marcy completed a residential real property disclosure statement that contained this inquiry: "To the best of your (Transferor (Seller)'s) knowledge, are there any defects or malfunctions in the [sewage system?]" Marcy checked the "No" box. The April 16 purchase agreement stated: "Buyer has entered into this agreement relying [on] . . . the information contained in the Alaska Residential Real Property Disclosure Statement, as required in AS 34.10." (The statutory reference probably should have been to "AS 34.70.010.") The agreement also contained an "as is" clause stating: "Buyer offers to purchase the property in its present condition."

Diblik advances statutory and common law theories to support his contention that Marcy's disclosure statement gave rise to liability, and that the trial court erred in finding for Marcy. First, Diblik argues that the trial court erred in finding that Marcy's statement that the septic tank was not defective was neither a fraudulent nor a negligent misrepresentation. Second, because the "no defect" statement was contained in a disclosure statement required by statute, Diblik argues that Marcy violated AS 34.70.040(a) by not amending or supplementing the disclosure statement after he replaced the floats and pump.[9]

#### 1. The trial court did not clearly err in finding that Marcy did not commit fraudulent or negligent misrepresentation.

■ The trial court indicated that the purchase agreement's "as is" clause would not preclude liability for a defect or condition that Marcy failed to disclose. The trial court then considered whether Marcy was liable for misrepresenting the condition of the property. It found that he was not. The trial court found that Marcy did not know, and had no reason to know, at the time of closing that there was a problem with the septic tank. The court found by a preponderance of the evidence that "the problem grew worse after Mr. Marcy moved out," so he would not have noticed a problem. Hence the court concluded that Marcy was not negligent in stating that the tank was not defective.

Diblik argues that after the floats and pump were replaced Marcy "knew, or reasonably should have known, that [Marcy was] wrong in his statutorily required disclosure statements that there were no problems with the sewage system." Diblik seems to argue that the superior court, in resolving his misrepresentation claims, erroneously relied on the "as is" clause. He asserts the trial court erred "when it gave effect to an 'as is' clause in a contract for the sale of realty, when the contract was based on substantial and material misrepresentations about the . . . condition of the property." Thus, Diblik is implicitly arguing that the trial court clearly erred in finding that Marcy's disclosure statement did not contain a fraudulent or negligent misrepresentation.

■■ One element of fraudulent misrepresentation is scienter, that is, knowledge of the misrepresentation's untrue character.[10] One element of negligent misrepresentation is the failure to exercise reasonable care or competence in obtaining or communicating the misinformation.[11] Therefore, for Diblik to prevail under either theory, he had to establish that Marcy was at least negligent in

**7.** *Id.*

**8.** *Id.*

**9.** AS 34.70.040(a) states: "If information in a disclosure statement becomes inaccurate as a result of an act or agreement after the disclosure statement is delivered to the transferee, the resulting inaccuracy does not violate this chapter

and the transferor is required to deliver an amendment for the disclosure statement to the transferee."

**10.** *Lightle v. State, Real Estate Comm'n,* 146 P.3d 980, 983–84 (Alaska 2006).

**11.** *Reeves v. Alyeska Pipeline Serv. Co.,* 56 P.3d 660, 670 (Alaska 2002).

communicating an erroneous statement about the condition of the septic tank.

The trial court found that because a professional engineer "certified that the septic [tank] met the applicable standards" after the floats and pump were replaced, Marcy had no reason to know that there was an existing problem with the tank at the time of closing. Marcy's testimony that he relied on the engineer's certification to conclude that the problems were fixed is sufficient to demonstrate lack of clear error as to this finding.

Diblik's failure to persuade the trial court that Marcy acted at least negligently is fatal to his claims for fraudulent and negligent misrepresentation. We therefore conclude that the superior court did not clearly err in resolving these theories of liability against Diblik and that its discussion of the "as is" clause did not erroneously affect its analysis of the controlling liability issues.

**2. Marcy did not violate AS 34.70 by failing to amend his disclosure statement.**

Alaska Statute 34.70.040(a) requires sellers to amend a residential real property disclosure statement if information in the disclosure statement "becomes inaccurate as a result of an act or agreement after the disclosure statement is delivered to the transferee." Diblik argues that Marcy was statutorily required to amend his disclosure form when Marcy discovered that the floats and pump had to be replaced. This argument is seemingly based on two theories. Both lack merit.

First, Diblik argues that Marcy was required to amend his disclosure form after Marcy "discovered, before closing, that [his] previous assertion that there was no defect[s] in the sewage system had been false." But as we discuss above, the trial court did not clearly err in finding that Marcy had no reason to know that this assertion was, in fact, false. Thus, Marcy's duty to amend the disclosure statement was never triggered.

Second, Diblik seems to argue that Marcy was required to amend his disclosure form to list the repairs made to the floats and pump. But as Marcy points out, Diblik received a written report before closing that informed him that a new pump had been installed. Before closing, Diblik also discussed the repairs directly with the engineer hired by Marcy. Diblik seems to argue that the report and his discussion with the engineer were insufficient because they were not a "supplement" to the disclosure form. Assuming the statute required the disclosure form to be amended or supplemented under these circumstances, Diblik's receipt of a copy of the written report was sufficient disclosure for the purposes of the statute. Moreover, Diblik has not explained how receiving a "report" rather than a "supplement" could have possibly caused him damage.

**C. The "Addendum"**

It is now undisputed that Marcy was incorrect in asserting in the document entitled Addendum to Residential Real Property Transfer Disclosure Statement that there were no repairs in the two years before the sale. Marcy admits on appeal that this assertion was incorrect because the septic tank's pipe and wiring had been repaired in the two years before the sale.

The trial court found that a reasonable buyer in Diblik's position would not have attached importance to the prior repairs to the pipe and wiring, and consequently ruled that any misrepresentation with regard to them was immaterial. It also found that those repairs were unrelated to the "actual problem" with the system—the tank's defective condition. Diblik argues that the trial court clearly erred in making these findings because, he asserts, Marcy is liable for his misstatement under the common law tort of misrepresentation. Diblik seems to contend that there are three theories under which Marcy is liable for his misrepresentation: fraud, negligence, and strict liability.

With regard to his strict liability theory, Diblik argues that the addendum was not required by AS 34.70 and was not part of the statutory disclosure statement. He therefore argues that the statute does not apply and that Marcy is strictly liable at common law for his misrepresentation under *Cousi-*

*neau v. Walker.*[12] Marcy responds that because the addendum was "incorporated into" the disclosure statement, under *Amyot v. Luchini,*[13] "any innocent misrepresentation claim regarding information contained therein is precluded by AS 34.70.010 et seq." For the reasons discussed below, we do not need to decide whether the addendum in this case, or the particular misstatement about prior repairs, should be considered part of the disclosure statement for purposes of applying AS 34.70.

Despite the addendum's undisputed inaccuracy, under any misrepresentation theory, Diblik can succeed only if Marcy's misstatement was material. In a common law tort action for misrepresentation there must be justifiable reliance on the false information supplied.[14] Because an immaterial representation cannot induce justifiable reliance,[15] Diblik had to prove that Marcy's misrepresentation with regard to the two prior repairs was material.

The trial court found following trial that a reasonable buyer in Diblik's position would not have attached importance to the two prior repairs. The court found that "even if Mr. Diblik had known that there was an electrical problem and a pipe problem prior to [the engineer's certification]," when the engineer gave his certification a reasonable buyer would have said "I'm good to go, I'll buy the house."[16] Diblik appears to contest this finding. He argues that "[t]he trial court erred as a matter of fact and law" because the court failed to appreciate that "the contract was based on substantial and material misrepresentations about the history and condition of the property." Diblik argues that the false statement regarding prior repairs was material because had he known about the repairs he might have done more investigation and altered his negotiation strategy. Diblik also asserts that knowledge of prior repairs "would lead a person to suspect the workmanship and competence of the person who installed the sewage system."

The plaintiff in a misrepresentation case bears the burden of establishing by a preponderance of the evidence that the misrepresentation was material.[17] We have described a "material fact" as one " 'to which a reasonable man might be expected to attach importance in making his choice of action.' It is a fact which could reasonably be expected to influence someone's judgment or conduct concerning a transaction."[18]

The trial court's finding is supported by the evidence and reasonable inferences per-

12. *Cousineau v. Walker,* 613 P.2d 608, 616 (Alaska 1980).

13. *Amyot v. Luchini,* 932 P.2d 244, 247 (Alaska 1997).

14. *See Anchorage Chrysler Ctr., Inc. v. Daimler-Chrysler Corp.,* 129 P.3d 905, 914 (Alaska 2006) (regarding fraudulent misrepresentation); *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.,* 45 P.3d 657, 671 (Alaska 2002) (regarding negligent misrepresentation); *Bevins v. Ballard,* 655 P.2d 757, 761–62 (Alaska 1982) (regarding innocent misrepresentation).

15. *See* RESTATEMENT OF TORTS § 538(1) (1938) ("Reliance upon a fraudulent misrepresentation of fact in a business transaction is justifiable if, but only if, the fact misrepresented is material."); 2 DAN B. DOBBS, LAW OF TORTS § 476, at 1363 (2001) ("Courts agree that the plaintiff is not justified in relying upon representations that are not material to the transaction.").

16. The trial court actually stated that when the engineer "said it's good to go, I find it hard to believe that any reasonable buyer under those circumstances would have said I'm good to go,

I'll buy the house." This sentence must be read in context of the previous paragraph of the trial transcript, in which the court rejected Diblik's prior repair theory. The sentence must also be read in context of the judgment entered against Diblik, resolving all claims against him. We are convinced that the trial court unintentionally omitted the word "not" between "would" and "have" in that sentence. In other words, we are convinced that the trial court determined that Marcy's failure to disclose the prior repairs was immaterial.

17. *See Nelson v. Progressive Corp.,* 976 P.2d 859, 864–65 (Alaska 1999) (noting that preponderance of evidence is standard of proof to establish that defendant engaged in knowing misrepresentation); *see also Schlesinger v. Herzog,* 2 F.3d 135, 141 (5th Cir.1993) ("In order to prevail, Plaintiffs must show that the Defendants engaged in fraudulent practices or made material omissions or misrepresentations ... upon which Plaintiffs relied, and which ultimately resulted in damages to Plaintiffs.").

18. *Cousineau,* 613 P.2d at 613 (quoting W. PROSSER, LAW OF TORTS § 108, at 719 (4th ed.1971) ).

missibly drawn from the evidence. Diblik testified at trial that he could have more thoroughly investigated whether the septic system was working properly had he known of the prior repairs. Also, Diblik's agent testified that if he had known about the prior repairs he would have recommended that Diblik get his own engineer to check out what was going on before he went further with the transaction. But the trial court found that once the septic tank was certified by the engineer a reasonable buyer in Diblik's position would have attached no importance to the repairs to the pipe and wires. This finding establishes that the misstatement about prior repairs was immaterial. Diblik has not convinced us that this finding was clearly erroneous.

Absent clear error as to this finding, we conclude that the trial court did not err in failing to hold Marcy liable for the misstatement in the addendum.

## IV. CONCLUSION

For these reasons, the superior court judgment is AFFIRMED.