NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SUE ELLEN MONTES and MARIO MONTES, | ) ) ) | Supreme Court Nos. S-18488/18778 (Consolidated) |
| Appellants, | ) ) | |
| | ) | Superior Court Nos. 3VA-20-00048 CI |
| v. | ) | and 3VA-20-00050 CI (Consolidated) |
| | ) | |
| ELMER MCCAIN, ELLEN MCCAIN, | ) | MEMORANDUM OPINION |
| VIOLA AMBERG, and ELLYN MARIE | ) | AND JUDGMENT* |
| VETERA in their capacities as trustees of | ) | |
| the Elmer Lee McCain Irrevocable Income | ) | No. 2073 – February 12, 2025 |
| Trust, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Valdez, Alaska, Rachel Ahrens, Judge.

Appearances: Sue Ellen Montes and Mario Montes, pro se, Anchorage, Appellants. Notice of nonparticipation filed by Jason J. Ruedy, Law Offices of Royce & Brain, Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

---

\*     Entered under Alaska Appellate Rule 214.

# I.    INTRODUCTION

The sellers of residential property misrepresented the condition of septic and electrical systems to the buyers. The buyers failed to make payments as required by the sales contract. In subsequent litigation, the trial court rejected the buyers' arguments that the contract was voidable. The court also held, in the alternative, that even if the contract was voidable, the buyers lost the power of avoidance because of affirmance and delay. The court awarded damages to the buyers for the sellers' negligence in making the misrepresentations. The court also awarded damages and attorney's fees to the sellers for the buyers' breach of contract.

We hold that it was legal error to rule that the contract was not voidable. Further, it was both clearly erroneous and legal error to find that the buyers could not avoid the contract. The buyers did avoid the contract, and unwinding the contract is the appropriate remedy. Accordingly, we reverse the decision, vacate the award of damages and attorney's fees, and remand for further proceedings. On remand, the court must undo the contract and restore the parties to their pre-contract positions. This will require ordering appropriate restitution and making new determinations as to the prevailing party and award of attorney's fees.

# II.    FACTS AND PROCEEDINGS

## A.    Facts

Ellen and Elmer McCain, with their adult children Ricky McCain and Viola Amberg (collectively the McCains), advertised real property for sale in Valdez with an asking price of $150,000. The McCains posted a for-sale sign that represented "UTILITIES AS CODE," referencing "ELECTRIC" and "SEPTIC SYS." Sue Ellen and Mario Montes saw the sign and later toured the trailer home on the property with the McCains in August 2018.

During the walkthrough, the Monteses observed that the trailer home needed significant repairs to the roof, floors, and bathroom. Before the sale, Elmer

McCain informed the Monteses that he installed the septic tank in 2001, that it was in "good condition," and that it had been pumped "recently." The Monteses did not conduct an independent inspection of the property at that time.

The Monteses entered a contract with the McCains to purchase the property for $120,000 in September 2018. The McCains did not provide the required residential real estate disclosure forms at any point before closing.[1] The Monteses intended to live on the property and develop it for rental income. They furnished a $15,000 down payment, and they were obligated to make monthly payments of $1,691 and pay property taxes and insurance. If the Monteses breached the contract, the McCains could terminate the agreement, keep "any and all payments" as liquidated damages, and retake possession of the property.

The Monteses moved into the trailer home a few weeks after the September closing. In 2019 the Monteses experienced problems with the septic system backing up at different points and leaking into the driveway. In January and early February 2020, the Monteses hired a company to pump the septic system, and the company informed them that it had last pumped the septic system for the property in 2013. The Monteses also asked Sue Ellen Montes's half-brother to dig up the septic system and identify the problem. In doing so, he destroyed insulation for the septic pipes and left an open hole.

Despite experiencing these problems, the Monteses continued living in the trailer and earned some income from the property. One of their tenants parked a camper on the property for more than a year in exchange for labor and $300. And for several months in 2019, two other tenants lived on the property and paid approximately $3,370 in rent through a combination of cash payments and credit for property cleanup and

---

[1] AS 34.70.010 ("Before the transferee of an interest in residential real property makes a written offer, the transferor shall deliver by mail or in person a completed written disclosure statement . . . .").

maintenance work.  In June 2020 the Monteses sold a shed that came with the property for $5,000.

The Monteses also experienced abnormally high electricity costs between November 2019 and May 2020 while living on the property and complained to the McCains about the bills.  They worked with multiple electricians to figure out the problem.  In late July or early August 2020, the Monteses hired an electrician to conduct an inspection of the electrical system, and the electrician determined that the system was not code-compliant.  The electrician estimated that it would cost between $16,500 and $35,000 to bring the electrical system up to code.

From the time they entered the contract, the Monteses failed to perform their contractual obligations.  Their initial payments were late, and most of their payments were partial.  They eventually stopped making payments altogether and never paid property taxes or purchased insurance.

On August 17, 2020, the Monteses informed the McCains about the issues with the electrical system and asked to renegotiate the contract.  On August 21 the Monteses explained to the McCains that they were experiencing problems with both the electrical and septic systems, and requested that the McCains either (1) "correct[] the electrical and septic problems . . . to bring the home up to code," (2) "amicably renegotiate" the contract, or (3) take back the property "minus all improvements, repairs, and restoration to the previous condition."

### B.    Proceedings

On August 31, 2020, the McCains sent the Monteses a notice to quit and later filed an amended complaint in superior court seeking ejectment.  In September the Monteses separately sued the McCains, alleging that misrepresentations and omissions induced the sale.  They sought possession of the property, rescission and reformation of the contract, and damages.

The Monteses continued to live on the property during the litigation. In September 2021 the City of Valdez determined that the trailer home on the property was "unfit for occupancy." The Monteses began moving out of the trailer the following day, but they remained on the property and lived in their camper through November.

The trial court consolidated the McCains' ejectment action with the Monteses' suit for possession, rescission, reformation, and damages. The court conditionally granted the McCains' request for ejectment prior to holding a trial but gave the Monteses a grace period to cure their breach and retain possession of the property. It found that the Monteses "ha[d] been in breach [of the contract] since the beginning" for their failure to pay property taxes and purchase insurance, and because they were "significantly behind [on] payments." However, it gave the Monteses 60 days to pay the remaining principal, all late fees, interest accrued, and property taxes.

The superior court held a three-day bench trial on the Monteses' claims in November and December 2021. The court determined that the McCains negligently failed to provide the required residential real estate disclosure forms and that they were negligent in misrepresenting the condition of the septic and electrical systems. But it concluded that the contract was not voidable.

Although the court determined that the Monteses could not avoid the contract, it awarded them $11,830 in compensatory damages for the McCains' negligence.[2] This award included an offset for revenue that the Monteses earned from the property. The court determined that the Monteses had not cured their breach of contract, so it denied their motion to reconsider its ejectment ruling and awarded possession of the property to the McCains. The court enforced the contract's liquidated damages provision and allowed the McCains to retain the Monteses' payments to date

---

[2] The court awarded the "same" damages for the McCains' negligent misrepresentations as it did for their negligent failure to provide the required residential real estate disclosures.

(approximately $44,000). Finally, the court awarded $70,733.82 in attorney's fees and costs to the McCains, which included an offset in the amount of the Monteses' damages award.

The Monteses appeal.

## III.  STANDARD OF REVIEW

"Whether a misrepresentation is material is a mixed question of law and fact."[3] Whether a party relied on a misrepresentation is a finding of fact.[4] We review questions of law de novo and findings of fact for clear error.[5] "A fact finding is not clearly erroneous unless the reviewing court has a definite and firm conviction that a mistake has been made."[6] In reviewing a trial court's factual findings, we do not reweigh evidence on appeal; we "only determine whether the trial court's findings are supported by the record."[7]

## IV.  DISCUSSION

We reverse and remand because it was error to conclude that the contract was not voidable and that the Monteses did not avoid the contract. First, the contract was voidable because the Monteses relied on material misrepresentations made by the McCains, and their reliance was justified. Second, the Monteses avoided the contract within a reasonable time after learning that the McCains misrepresented the condition of the electrical system. Consequently, on remand the trial court must unwind the

---

**3**     *Diblik v. Marcy*, 166 P.3d 23, 25 (Alaska 2007) (citing *Cousineau v. Walker*, 613 P.2d 608, 613 (Alaska 1980)).

**4**     *See Cousineau*, 613 P.2d at 612.

**5**     *Diblik*, 166 P.3d at 25.

**6**     *Id.* at 25-26.

**7**     *Id.* at 26.

contract.[8]   Because we reverse and remand, we vacate the awards of damages and attorney's fees.  This will necessitate a new prevailing party determination and fee award on remand.

A.   **The McCains' Misrepresentations About The Utilities Made The Contract Voidable.**

The trial court's determination that the contract was not voidable was legal error.  The court's finding that the Monteses would have negotiated more favorable terms if the McCains had provided accurate information about the condition of the utilities compels the conclusion that the misrepresentations were material.  The court's conclusion that the misrepresentations did not induce the Monteses to enter the contract is erroneous because it is founded on a misunderstanding of the standards for materiality and inducement.

A party induced by a misrepresentation may avoid the contract if the misrepresentation is either fraudulent or material.[9]   To avoid a contract based on a material misrepresentation, the buyers must establish that (1) they in fact relied on the misrepresentation, (2) the misrepresentation was material to the transaction, and (3) the buyers' reliance was justified.[10]   As to the first requirement, a party relies on a misrepresentation in entering a contract when the misrepresentation induces the party's

---

[8]      We do not further address the trial court's damages award for the McCains' failure to provide the required residential real estate disclosure form under AS 34.70.010.  The court found that the McCains were negligent by failing to provide the disclosure forms and by misrepresenting the condition of the utilities.  These factual findings were not clearly erroneous.  Further, the Monteses are not entitled to compensatory damages under AS 34.70.010 because recission will restore them to their pre-contract position.

[9]      *Indus. Com. Elec., Inc. v. McLees*, 101 P.3d 593, 598 (Alaska 2004*)* (citing RESTATEMENT (SECOND) OF CONTS. § 164 (AM. L. INST. 1981)).

[10]      *Cousineau v. Walker*, 613 P.2d 608, 612 (Alaska 1980).

assent to the contract.[11]  Inducement requires that the misrepresentation "substantially contribute[d] to [the party's] decision to manifest . . . assent."[12]  And in determining whether a misrepresentation "substantially contributed to [the purchaser's] decision to make the contract," it is "immaterial that [the purchaser] may also have been influenced by other considerations."[13]  An inducing cause need not have been "the paramount or decisive inducement."[14]  Second, a material misrepresentation is a false statement that is "likely to induce a reasonable person to manifest . . . assent."[15]  Lastly, the party's reliance on a material misrepresentation must be justified.  "Whether reliance is justified in a given case . . . turn[s] on the course of dealings between the parties . . . ."[16]

The trial court's finding that the McCains negligently misrepresented the condition of the septic and electrical systems has strong support in the record.[17]  The

---

[11]  *See* RESTATEMENT (SECOND) OF CONTS. § 167 cmt. a ("A misrepresentation is not a cause of a party's making a contract unless he relied on the misrepresentation in manifesting his assent.").

[12]  *Id.* § 167.

[13]  *Id.* § 167 cmt. a.

[14]  26 WILLISTON ON CONTRACTS § 69:12 (4th ed. 2024); *see, e.g.*, *Jordan v. Knafel*, 880 N.E.2d 1061, 1069-70 (Ill. App. 2007) (holding that professional basketball player was induced to enter hush-money agreement with past romantic partner by false statement that she was pregnant with his child even though he also sought to preserve image and protect endorsements).

[15]  RESTATEMENT (SECOND) OF CONTS. § 162; *see also Diblik v. Marcy*, 166 P.3d 23, 28 (Alaska 2007) (describing a material fact in a transaction as one that "could reasonably be expected to influence someone's judgment or conduct concerning a transaction" (quoting *Cousineau*, 613 P.2d at 613)).

[16]  *Indus. Com. Elec., Inc. v. McLees*, 101 P.3d 593, 601 (Alaska 2004).

[17]  Because we determine that the misrepresentations were material, we need not disturb the trial court's finding on fraud to find the contract voidable.  *See* RESTATEMENT (SECOND) OF CONTS. § 164 cmt. a ("[T]he misrepresentation must have been either fraudulent or material.").

court also found that although the misrepresentations about the utilities were not the decisive factor in the sale, the Monteses "would have acted differently" — perhaps they might have "negotiated for more favorable pricing, provided a smaller deposit, or asked for a lower interest rate" — "had they known the extent of the problems." It found that the Monteses "credibly testified" that the misrepresentations "influenced their decision to purchase the [p]roperty, even if the representations did not induce the [c]ontract itself." The cost to repair the septic and electrical systems was substantial relative to the purchase price and to the cost of other repairs.[18] And price and interest rate are key terms in a real estate contract.[19] These findings compel the conclusion that the misrepresentations were a substantial factor in the Monteses' decision to agree to the sale. In other words, the misrepresentations induced the Monteses to agree to the terms of *this* particular contract.

The trial court further found that the misrepresentations were not material because "[t]he Monteses knew they were buying [p]roperty with substantial flaws." But it does not matter that the Monteses may have been partially influenced by considerations that the property had substantial flaws[20] because, as discussed above,

---

[18] The costs to fix the electrical and septic systems were estimated to be $16,500-$35,000 and $3,000-$5,000, respectively. By comparison, the Monteses claimed that they received a $10,000 estimate to fix the roof. As noted above, the purchase price of the property was $120,000.

[19] *See Jackson v. White*, 556 P.2d 530, 533-34 (Alaska 1976) (stating that real property sales contract that specified property, total purchase price, term, and interest rate had "only [one] material term missing": some form of security for seller); *LaMore Rest. Grp., LLC v. Akers*, 748 N.W.2d 756, 762 (S.D. 2008) ("Purchase price, of course, is a material term to a real estate contract."); *cf. Alaska Int'l Constr., Inc. v. Earth Movers of Fairbanks, Inc.*, 697 P.2d 626, 644 (Alaska 1985) (Compton, J., dissenting) (stating that in mistake cases, "where a material term of a contract is involved, such as the price term, the size of the error" may be less relevant).

[20] *See* RESTATEMENT (SECOND) OF CONTS. § 167 cmt. a.

they were not aware of the full extent of the property's flaws when they entered the contract. A misrepresentation is material if "a reasonable person would attach importance to its existence . . . in determining his or her choice of action" in the sale.[21] A representation that essential utilities were code-compliant would have influenced any reasonable buyer's decision to purchase the property even though it had substantial flaws, especially where the buyer planned to use the property as their residence and develop it for rental income.[22]

Lastly, the record also supports the trial court's conclusion that the Monteses' reliance was justified. The Monteses knew that the McCains had lived on the property for 15 years prior to the sale, which gave them reason to trust the McCains' statements about the condition of the property's septic and electrical systems.

In sum, the misrepresentations by the McCains as to the condition of the septic and electrical systems were material and the Monteses justifiably relied on them. Therefore, the contract is voidable by the Monteses.

**B.    The Monteses Exercised Their Power To Avoid The Contract Within A Reasonable Time.**

The trial court concluded that the Monteses lost the power to avoid the contract through affirmance and delay. The court found that the Monteses "knew, or should have known, the McCains had misrepresented the septic system" after experiencing sewage leaks in 2019 and 2020. They also knew by January 2020 that the McCains had misrepresented that the septic system had recently been pumped. But the

---

[21]    26 WILLISTON ON CONTRACTS § 69:12 (4th ed. 2024).

[22]    *See* AS 34.03.100(a)(3) (requiring residential landlords to maintain electrical and plumbing systems "in good and safe working order"); *Cousineau v. Walker*, 613 P.2d 608, 612-13 (Alaska 1980) (holding that seller's misstatements about facts relevant to purchaser's intended commercial use were likely to induce reasonable buyer to purchase property).

Monteses continued to possess the property and make payments after this point, so the court found that they affirmed the contract.

The court further found the Monteses did not know until July 2020 — after the electrician's inspection — that the McCains had misrepresented the electrical system as being up to code. But the trial court concluded that the Monteses lost the power to avoid the contract based on this misrepresentation because they delayed avoiding the contract until after litigation began.

A party loses the power to avoid a contract for a material, non-fraudulent misrepresentation if, after the party has reason to know of the misrepresentation, the party (1) "manifests to the other party [an] intention to affirm" the contract, (2) "acts with respect to anything . . . received in a manner inconsistent with disaffirmance," or (3) "does not within a reasonable time manifest to the other party his intention to avoid it."[23] A party may affirm a contract through words or conduct.[24] Conduct affirming a contract includes a buyer's exercise of control over what the buyer purchased "in a manner inconsistent with avoidance of the contract."[25] For example, someone who buys land and continues to occupy and use it after discovering a material misrepresentation has affirmed the agreement and can no longer avoid it.[26]

We agree with the trial court that the Monteses affirmed the contract after they had the septic system pumped in January 2020. At this point they knew or should have known that the McCains had misrepresented the condition of the septic system;

---

[23]     RESTATEMENT (SECOND) OF CONTS. §§ 380-81.

[24]     *Id.* § 380 cmt. b; *see also Adams v. Adams*, 89 P.3d 743, 751 (Alaska 2004) (holding that party signing lease extension manifested "a willingness to go on with the contract" and accordingly affirmed it (quoting RESTATEMENT (SECOND) OF CONTS. § 380 cmt. a)).

[25]     RESTATEMENT (SECOND) OF CONTS. § 380 cmt. b.

[26]     *Id.* § 380 cmt. b., illus. 4.

the septic company informed the Monteses that it had not pumped the system for seven years, and the Monteses had been experiencing leakage and other issues since 2019. And they then affirmed the contract by continuing to make some payments on the property, possessing it, earning rent from it, and selling a structure that came with the property.[27]

The trial court's determination that the Monteses affirmed the contract with respect to the misrepresentation about the electric system, however, was both clearly erroneous and legal error. When the Monteses discovered the electrical system was not up to code in July 2020, they promptly and unequivocally indicated their intent to avoid the contract. The Monteses' request in August 2020 that the McCains take back the property, "minus all improvements, repairs, and restoration to the previous condition," is consistent with attempting to rescind the contract[28] and is therefore "inconsistent with the continued existence of the contract."[29] The request to lower the contract price also demonstrated a refusal to adhere to the contract that they entered.[30]

The finding that the Monteses did not attempt to avoid the contract until after litigation began was clearly erroneous. The Monteses informed the McCains on

---

[27]     *Id.* § 380 cmt. b ("A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract."); *see also id.* § 380 cmt. b, illus. 4; *accord Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 826 N.E.2d 430, 440 (Ill. App. 2005) (holding that jury could infer affirmance of lease because tenant continued to occupy office suite and paid rent).

[28]     *Watega v. Watega*, 143 P.3d 658, 666 (Alaska 2006) (explaining that rescission restores parties to pre-contract positions "at least as far as [it is] possible to do so" (quoting 1 DAN. B. DOBBS, LAW OF REMEDIES § 4.8, at 676 (2d ed. 1993))).

[29]     17B C.J.S. *Contracts* § 652 (2024).

[30]     *See, e.g.*, *Jones v. Cartee*, 489 S.E.2d 141, 144 (Ga. App. 1997) (holding that party's renegotiation of terms of contract "demonstrated [that party's] refusal to agree with the terms of the original contract").

August 21 that they wanted to rescind the contract, which was before the McCains served the complaint for forcible entry and detainer on August 31. This finding underpinned the trial court's conclusion that the Monteses had affirmed or otherwise failed to timely avoid the contract. But the Monteses *did* elect to avoid the contract before litigation began. Further, the Monteses did not make subsequent rent payments or otherwise "manifest[] [their] intention to affirm" the contract.[31] The trial court did not find that the delay from July to August enabled the Monteses to "speculate at the [McCains'] risk" or induced the McCains to justifiably rely on the Monteses' delay in avoiding the contract.[32]

Even if the Monteses had waited until litigation began to avoid the contract, it was legal error to conclude that the Monteses had affirmed or otherwise unreasonably delayed avoidance by doing so. A party may seek rescission for the first time when defending a breach-of-contract action.[33] This is particularly true of executory contracts.[34] That the Monteses "never acted to void the [c]ontract before litigation began" is immaterial to the issue of unreasonable delay in this case.

---

**31** *See* RESTATEMENT (SECOND) OF CONTS. § 380 (discussing the manner of affirmance).

**32** *See id.* § 381 (enumerating relevant circumstances for finding a delay unreasonable).

**33** 27 WILLISTON ON CONTRACTS § 69:58 (4th ed. 2024) (noting that party "may first assert his right [for misrepresentation] when his adversary first asserts his claim by action").

**34** *See* RESTATEMENT (SECOND) OF CONTS. § 7 cmt. d ("[P]articularly where the contract is entirely executory on both sides, no manifestation of intention is necessary until an action is brought against the party having the power of avoidance."); *Contract*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining executory contract as one "for which there remains something still to be done on both sides"). Here, delivery of the deed was conditioned upon the Monsteses fulfilling their payment obligations, and the Monteses were not required to seek avoidance before litigation.

This case does not require us to further delineate the bounds of what constitutes an unreasonable delay. Here, the delay between July, when the Monteses discovered the misrepresentation regarding the code compliance of the electrical system, and August, when they sought recission, was not unreasonable. Further, we see no evidence in the record to support a different conclusion.[35]

**C. The Trial Court Must Unwind The Contract And Complete Rescission By Awarding Appropriate Restitution On Remand.**

Avoidance is often accomplished through rescission and restitution.[36] Rescission is a complete unwinding of the transaction that aims to restore the parties to the position they were in before they entered the contract.[37] Accordingly, rescission is awarded to parties seeking avoidance in cases where restitution can restore each party

---

[35] *See* RESTATEMENT (SECOND) OF CONTS. § 381 cmt. a (explaining that "what time is reasonable depends on all the circumstances, including the extent to which the delay was or was likely to be prejudicial to the other party"); 17B C.J.S. *Contracts* § 648 (2024) ("A party who unnecessarily delays in asserting a right to rescind may lose the right to relief, or forfeit the right to rescind where the delay substantially prejudices the other party. Once the parties' positions have changed significantly, the right to rescind is lost.").

[36] *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 13(1) (AM. L. INST. 2011); DAN B. DOBBS & CAPRICE L. ROBERTS, LAW OF REMEDIES § 4.3(6), at 422 (3d ed. 2018).

[37] *Watega v. Watega*, 143 P.3d 658, 666 (Alaska 2006); 17B C.J.S. *Contracts* § 661 (2024) (explaining that "[r]escission abrogates a contract completely from the beginning for all purposes" and "return[s] the parties to their respective conditions or positions they were in prior to the making of the contract").

to the pre-contract status quo.[38]  Courts determine whether restitution is appropriate; restitution is not a matter of right.[39]

Rescission and restitution can restore the parties to their pre-contract position here, so the trial court must calculate appropriate restitution on remand. Generally, "rescission [of a real estate contract] 'calls for a return of the land to the seller, with the buyer given judgment for payments made under the contract plus the value of improvements, less reasonable rental value for the period during which the buyer was in possession.' "[40]

Because the Monteses exercised their power to avoid the contract, the trial court must restore the parties to their pre-contract positions.  The trial court previously granted the McCains' motion for ejectment and awarded the McCains possession of the property upon the Monteses' failure to cure their breach.  To avoid unjust enrichment to either side, the court must effectuate complete rescission by

---

[38]  RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 54(3). See also *id.* § 54(2), which explains rescission:

> Rescission requires a mutual restoration and accounting in which each party (a) restores property received from the other, to the extent such restoration is feasible, (b) accounts for additional benefits obtained at the expense of the other as a result of the transaction and its subsequent avoidance, as necessary to prevent unjust enrichment, and (c) compensates the other for loss from related expenditure as justice may require.

[39]  *See id.* § 54 cmt. b (explaining that determination of "whether justice will be served by attempting to unwind the transaction instead of enforcing it . . . has always been committed to the sound discretion of the court"); 92 C.J.S. *Vendor and Purchaser* § 357 (2024) ("The granting or withholding of rescission is not a matter of right but one of grace, governed by equitable considerations, and lying largely within the discretion of the court.").

[40]  *Watega*, 143 P.3d at 666 (quoting *Potter v. Oster*, 426 N.W.2d 148, 151 (Iowa 1988)).

unwinding the contract and ordering restitution of any benefits received and costs incurred by each party.[41] It must determine the exact amount the Monteses paid to the McCains and award that amount with appropriate prejudgment interest.[42] Additionally, the court must determine whether the Monteses are entitled to compensation for the cost of any necessary repairs they made to the property.[43]

Any award to the Monteses must be offset by the value they received by virtue of their possession of the property. This amount will include earnings the Monteses received from rentals and the sale of the shed that came with the land. The offset must also include the property's residential use value to the Monteses during the period they occupied it.[44] Finally, the court must determine if either party should be compensated for diminution in value and/or damage to the property, tax and insurance liabilities, and any other costs incurred as a result of entering the contract.[45]

### D. The Trial Court Must Make A New Prevailing Party Determination And Recalculate Attorney's Fees On Remand.

The trial court awarded the McCains full attorney's fees and costs under the contract. The Monteses claim that the attorney's fee award included "many

---

[41] RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 54(2).

[42] *See Miller v. Sears*, 636 P.2d 1183, 1194 (Alaska 1981)*; see also* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 53(4) (explaining that liability for use value of money may be imposed by awarding prejudgment interest).

[43] RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 54 cmt. h.

[44] *Miller*, 636 P.2d at 1193 (holding that "[w]here the property is a residence, occupied as such by the purchaser," purchaser's use value "is measured by the fair rental value of the property").

[45] *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 54 cmt. h.

inappropriate expenses." They also ask this court to declare them the prevailing party and award them attorney's fees on appeal.

Because we reverse the trial court's conclusions regarding voidability and avoidance in favor of the Monteses, we vacate the attorney's fees award against them.[46] On remand, the court must make a new prevailing party determination.[47] Additionally, the contract will become null once it is rescinded, so neither party may obtain full "reasonable attorney's fees" and costs under the contract.[48] Therefore, if a party so requests, in addition to determining the prevailing party, the trial court must recalculate appropriate attorney's fees under Alaska Civil Rule 82.

## V.    CONCLUSION

The superior court's determinations that the contract was not voidable, that the Monteses lost the power to avoid the contract, and that the Monteses did not timely void the contract are REVERSED; the awards for damages and attorney's fees are VACATED; and the case is REMANDED for further proceedings consistent with this opinion.

---

[46]    *See Lee v. Konrad*, 337 P.3d 510, 525 (Alaska 2014) ("The prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered.").

[47]    *See id.* at 525-26 (remanding for prevailing party determination after reversing part of superior court's judgment because "[t]he prevailing party determination is within the broad discretion of the trial court").

[48]    *See* 17B C.J.S. *Contracts* § 661 (2024) ("Upon rescission, the parties give up . . . all rights arising under the contract, which are vitiated or invalidated, or annulled . . . and rescission results in the abrogation of the parties' rights and responsibilities . . . from the contract's inception.").